**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lawrence J. Warfield, Reciever, | No. CV 03-2390-PHX-JAT |
| Plaintiff, | **AMENDED ORDER SUPERCEDES AUGUST 1, 2006, ORDER** |
| vs. | |
| Michael Alaniz, *et al.*, | |
| Defendants. | |

Pending before the Court is the Receiver's Motion for Partial Summary Judgment (doc. 464) and the Rada Defendants' Motion for Summary Judgment (doc. 476). The Court now rules on the motions.

**I.    INTRODUCTION**

Lawrence Warfield (the "Plaintiff" or the "Receiver") is the court-appointed Receiver for the Mid-America Foundation ("Mid-America"). On April 14, 2005, the Plaintiff filed his Third-Amended Complaint. On December 29, 2005, the Plaintiff moved for partial summary judgment on the fraudulent-transfer claim alleged against Defendants Leonard and Elizabeth Bestgen, Robert Caroll, Rudy and Mary Crosswell, Charles Davis, Richard Derk, Orville and Dale Frazier, Ronald Allen Kerher, Dwight Lankford, John and Candes Rada,

1   Paul and Patrick Wehrly (the "Rada Defendants"), as well as Renald Bidwell.[1]

2   On December 30, 2005, the Rada Defendants filed a cross-motion for summary

3   judgment.

4   **II.     LEGAL ANALYSIS**

5   The standard for summary judgment is set forth in Rule 56(c) of the Federal Rules of

6   Civil Procedure. Under this rule, summary judgment is properly granted when: (1) no

7   genuine issues of material fact remain; and (2) after viewing the evidence most favorably to

8   the non-moving party, the movant is clearly entitled to prevail as a matter of law.  Fed. R.

9   Civ. P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53 (1986);

10  *Eisenberg v. Ins. Co. of N. Am.,* 815 F.2d 1285, 1288-89 (9th Cir. 1987).  The Court must

11  regard as true the non-moving party's evidence, if it is supported by affidavits or other

12  evidentiary material.  *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Eisenberg,* 815 F.2d at 1289.

13  However, the non-moving party may not merely rest on its pleadings, it must produce some

14  significant probative evidence tending to contradict the moving party's allegations and

15  thereby creating a material question of fact.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242,

16  256-57, 106 S.Ct. 2505, 2513-14 (1986) (holding that the plaintiff must present affirmative

17  evidence in order to defeat a properly supported motion for summary judgment); *First Nat'l*

18  *Bank v. Cities Serv. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968).

19  The parties agree that Arizona substantive law applies to the state-law claims at issue

20  in the pending motions.

21  Although the parties filed separate motions for summary judgment, the issues raised

22  by the parties overlap.  Therefore, rather than address each motion separately, the Court will

23  organize its discussion by the issues raised.

24  ────────────────

25  [1] Renald Bidwell is appearing *pro se* in this matter and failed to file a response to the
    Motion for Summary Judgment.  The Plaintiff has not moved for summary disposition with
26  respect to Defendant Bidwell.  In the interest of adjudicating claims on their merits, the Court
    will not dispose of this claim summarily.  Accordingly, this Court's analysis of the
27  Receiver's Motion for Partial Summary Judgment shall be construed as including Renald
28  Bidwell as well as the Rada Defendants.

1      A.     **Lack of Standing**

2      The Rada Defendants argue that the Plaintiff lacks standing to assert various claims

3 asserted in the Third-Amended Complaint.

4      1.     **Claims based on the Purchase of Charitable Gift Annuities**

5      The Rada Defendants argue that they are entitled to summary judgment on counts 7

6 and 8 of the Plaintiff's Third-Amended Complaint because: (1) Charitable Gift Annuities

7 ("CGA or "the annuities") are excluded from the definition of "security" under both state and

8 federal laws; and (2) even if CGAs are securities, they are "exempted securities," excluded

9 by 15 U.S.C.A ("U.S.C.") § 77(c)(a)(8) (West 1997), which provides a "safe harbor" for

10 charitable securities.

11      As the Rada Defendants concede on page 5 of their Memorandum of Points and

12 Authorities in Support of their Motion for Summary Judgment, in *S.E.C. v. Dillie,* CV 01-

13 2493-PHX-JAT (the underlying S.E.C. proceeding that authorized this lawsuit against the

14 Defendants), this Court found that the CGAs at issue were "securities," not subject to any

15 exemptions, for purposes of application of the relevant securities laws.  While it is true that

16 the Rada Defendants were not parties to that action and are not bound by that ruling, the

17 Court nevertheless finds the ruling to be correct and applicable to this case as well.[2]

18      Consistent with this Court's ruling in *S.E.C. v. Dillie,* CV 01-2493-PHX-JAT, and for

19 the reasons set forth in the Receiver's Response and Opposition to Rada Defendants' Motion

20 for Summary Judgment filed in this case, the Court finds that the CGAs at issue in this case

21 are securities not subject to any exemptions.

22      a.     **The Mid-America CGAs are Securities**

23      Congress' purpose in enacting the federal securities laws was to regulate investments

24 – regardless of the form they take or the name that they are called.  *S.E.C. v. Edwards,* 540

25 U.S. 389, 393, 124 S.Ct. 892, 896 (2004).  Consistent with that purpose a "security," as

26

27

28      [2] Due to the ancillary nature of these proceedings, this Court's decision not to revisit this purely legal issue is also consistent with the "law of the case" doctrine.

defined by federal securities law,[3] broadly encompasses "virtually any instrument that might be sold as an investment." *Id.* The term security has been defined to include any "note" or " investment contract." *S.E.C. v. Edwards,* 540 U.S. 389, 393, 124 S.Ct. 892, 896 (2004). As discussed below, the CGAs at issue in this case qualify as investment contracts.

Although the term "investment contract" is not defined in the securities legislation, the United States Supreme Court held that an investment contract "involves an investment of money in a common enterprise with profits to come solely from the efforts of others. *Id.* (discussing and quoting *SEC v. W.J. Howey Co.,* 328 U.S. 293, 66 S.Ct. 1100 (1946)). Because the definition of "security" is substantially similar under Arizona law, Arizona courts apply this same test to determine whether an instrument constitutes an investment contract. *Nutek Information Sys. v. Ariz. Corp. Comm'n,* 194 Ariz. 104, 108, 977 P.2d 826, 830 (Ct. App. 1998), *cert. denied, AKS Daks Communications, Inc. v. Ariz. Corps. Com'n,* 528 U.S. 932, 120 S.Ct. 332, 145 (1999). The test must be applied in light of the economic realities of the transaction rather than the labels used by the participants in the transaction. *United Housing Inc. v. Forman,* 421 U.S. 837, 851-852, 95 S.Ct. 2051, 2060 (1975).

Despite the Defendants' assertions to the contrary, there is "no reason to distinguish between promises of fixed returns and promises of variable returns for purposes of the test." *Edwards,* 540 U.S. at 394-95, 124 S.Ct. at 897. In fact, instruments pitched as low-risk (such as those offering a "guaranteed" fixed return) are "particularly attractive to individuals more vulnerable to investment fraud, including older and less sophisticated investors," such as those in this case. *Id.*

Here, the investors paid money to Mid-America through an irrevocable gift of cash, securities, or other assets. In return, Mid-America promised to pool the money in investments such as stocks, bonds, and money market funds, and to periodically pay each of

---

[3] The term security is defined under both the Federal Securities Act of 1933, and the Federal Exchange act of 1934, however, the definitions are virtually identical. *S.E.C. v. R.G. Reynolds Enters., Inc.,* 952 F.2d 1125, 1130 n. 4 (9th Cir. 1999).

1    the investors a fixed sum of money based on their individual ages and the date that payments

2    commenced.   In addition to a monthly income stream, the investors expected to receive

3    substantial tax benefits resulting from their purchase of the CGAs.

4        The Court finds that the financial instruments at issue in this case are securities for

5    purposes of both federal and state securities law because they involve: (1) an investment of

6    money;[4] (2) in a common enterprise;[5] (3) with a reasonable expectation by the investors of

7    profits to be derived from the managerial efforts of others.[6]  *Howey,* 328 U.S. at 301, 66 S.Ct.

8    at 1104; *Rose v. Dobras,* 128 Ariz. 209, 211, 624 P.2d 887, 889 (Ct. App. 1981).

9            b.    **The Mid-America CGAs are not Exempt**

10        The exemptions of the Federal Securities Act of 1933 (the "Securities Act") and the

11    Federal Exchange Act of 1934 (the "Exchange Act") do not apply in this case.   The

12    Securities Act contains an exemption for certain insurance products such as insurance

13    policies and annuities subject to regulation by an insurance commissioner or officer

14    performing similar functions. 15 U.S.C.A. § 77c(a)(8) (West 1997).  However, the mere use

15    of the label "annuity" does not result in exemption. CJS Securities § 57: *Insurance Policies*

16    *and Annuities*.   Just because the issuer promises to serve as an investment agency, the

17    assumption of an investment risk by the issuer does not alone allow a variable annuity to

18    constitute insurance.  *Id.*  The question common to the exemption provisions is whether the

19

20        [4] Despite the fact that Mid-America was paid through irrevocable gifts, the investors
21    clearly expected a return on their investment in the form of annuity payments, tax benefits,
      and at the investors death, the return of the gift to a charity or charities designated by that
22    investor.

23        [5] In the Ninth Circuit, there is a "common enterprise" when, as here, the investors
24    money was to be pooled.  *Hocking v. Dubois,* 885 F.2d 1449, 1459 (9th Cir. 1989), *cert.*
      *denied,* 494 U.S. 1078, 110 S.Ct. 1805 (1990).

25        [6] This element is met where the managerial efforts made by those other than the
26    investor affect the failure or success of the enterprise.  *Hocking,* 885 F.2d at 1455.  This
      element is clearly met because Mid-America exercised complete control over the
27    "investment" of the funds transferred to it by the investors.

28

issuer has issued contracts of insurance. *S.E.C. v. Variable Annuity Life Ins. Co.,* 359 U.S. 65, 68, 79 S.Ct. 618, 620 (1959). The United States Supreme Court has stated that the "earmark of insurance," as it has been commonly perceived in popular understanding, is that the issuer bears all of the risk of the investment. *Id.* at 71-73, 79 S.Ct. at 622-23.

The GCAs in this case were not issued by an insurance agency. Likewise, they were not fixed annuities regulated by a government agency. Mid-America was not an insurance company. Mid-America operated solely to facilitate Dillie's Ponzi scheme, and the investors were its only source of revenue. The revenue was pooled and invested in stocks, bonds, money market funds, federal obligations, and other short-term and long-term investments, solely for the purpose of facilitating the Ponzi scheme. Thus, the CGAs in this case did not shift the risk of investment from the investors to Mid-America. Were the investment scheme to fail, and due to the nature of a Ponzi scheme Mid-America knew that it ultimately would fail, the risk of financial loss would, and did, fall entirely on the investors. Mid-America bore no true underwriting risks, as contemplated by the United States Supreme Court's definition of exempted insurance products and companies. Moreover, as noted previously, the fact that Mid-America promised the investors a "fixed" return, does not remove the CGAs from the definition of a security. *Edwards,* 540 U.S. at 397, 124 S.Ct. at 899.

The Exchange Act exempts any security "issued by or any interest or participation in any pooled income fund, collective trust fund, collective investment fund, or similar fund that is excluded from the definition of an investment company under section 80a-3(c)(10)(B)." 15 U.S.C.A. § 78c(a)(12)(A)(v). 15 U.S.C. § 80a-3(c)(10)(B)(iii) (West 1997 & Supp. 2005),[7] excludes from the definition of an investment company, "assets contributed to a charitable organization in exchange for the issuance of charitable gift annuities." However, the mere fact that Mid-America called its financial instrument a "charitable gift annuity" does not remove that investment from the definition of a security via this exclusion. *See, e.g., United Housing Foundation,* 421 U.S. at 850, 95 S.Ct. at 2059 (the name given to an

---

[7] The Philanthropy Protection Act of 1995.

instrument is not dispositive).

The definition of a security "embodies a flexible rather than a static principle, one that is capable of adaption to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits." *Howey,* 328 U.S. at 229, 66 S.Ct. at 1103.   As noted previously, economic form, not substance, determines whether an instrument is a security. *Tcherepnin v. Knight,* 389 U.S. 338, 336, 88 S.Ct. 542, 553 (1967). Here, although the GCA's were denominated as "charitable gift annuities," the investors' funds were pooled in a "common enterprise" with the expectation that Mid-America's management of the funds would result in profits to the investors.   As this Court held previously, regardless of whether Mid-America called its financial instruments "charitable gift annuities," they were in fact investment contracts.

The Securities Act and the Exchange Act are remedial in nature and their purpose is to:

> prevent further exploitation of the public by the sale of unsound, fraudulent, and worthless securities through misrepresentation; to place adequate and true information before the investor; to protect honest enterprise, seeking capital by honest presentation against the competition afforded by dishonest securities offered to the public through crooked promotion . . .

*S.E.C. v. Koscot Interplanetary, Inc.,* 497 F.2d 473, 480 (5th Cir. 1974) (quoting Senate Committee on Banking & Currency, S.Rep.No.47, 73d Cong., 1st Sess. 1 (1933)).   Broad and liberal interpretations should be employed to reflect this remedial purpose. *Stowell v. Ted S. Finkel Inv. Services, Inc.,* 489 F.Supp. 1209, 1219 (S.D. Fla. 1980).   This Court's holding that the financial instruments at issue in this case are investment contracts and are not subject to any exemptions is consistent with this remedial purpose of the Securities Act, Exchange Act, and Philanthropic Protection Act, and is well within the broad scope of securities regulation.

The Court's holding is also consistent with 15 U.S.C. § 78c(3)(b)(2), which explicitly provides that the Exchange Act exemption for "funds contributed to a charitable organization in exchange for the issuance of charitable gift annuities," is not available to persons who

1  collect commissions or special compensations collected based on the number or value of

2  "donations," collected for the fund.  Here, there is no dispute that the Defendants collected

3  commissions based on their sale of the Mid-America "CGAs."  Thus, the exception set forth

4  in 15 U.S.C.A. § 78(c)(a)(12)(A)(v) is not available to the Defendants in this case.

5          2.  **Claims Brought on Behalf of Third-party "Victims"**

6        The Rada Defendants argue that they are entitled to summary judgment on the

7  Plaintiff's claims of: (1) breach of fiduciary duty (Count One); (2) constructive fraud in a

8  confidential relationship (Count Two); (3) negligence and gross negligence (Count Four);

9  (4) fraud (Count Six); (5) declaratory and equitable relief/unjust enrichment (Count Five);

10  (6) conversion (Count Ten); and (7) equitable disgorgement (Count Eleven), for the reason

11  that the Plaintiff lacks standing to bring claims on behalf of third-parties.

12        The Rada Defendants argue that the Plaintiff only has authority to bring claims

13  belonging to the entity in receivership (Mid-America) not on behalf of third parties (the

14  purchasers of the CGAs).  *See e.g., Scholes v. Lehemann,* 56 F.3d 750, 753 (7th Cir. 1995)

15  (an equity receiver may sue only to redress injuries to the entity in receivership); *Scholes v.*

16  *Stone, McGuire & Benjamin,* 821 F.Supp. 533, 535 (N.D. Ill. 1993) (it is a well-known legal

17  principle that a receiver can bring only those claims belonging to the entity it represents and

18  cannot bring claims on behalf of third parties; receivers in general have standing to assert

19  state-law claims on behalf of entities in receivership but such claims must involve damages

20  which belong to the entities rather than to the investors); *Johnson v. Miller,* 596 F.Supp. 768,

21  772 (D. Colo. 1984) (finding that the plaintiff lacked standing to assert claims which

22  belonged to the individual investors not the corporation in receivership, but did have standing

23  to assert claims for wrongs committed against the corporation in receivership).

24        The Rada Defendants argue that while the Receiver can bring claims to redress

25  injuries to the entity in receivership (Mid-America), the damages alleged in these causes of

26  action were suffered by third-party "victims" (the purchasers of the CGAs) not Mid-America.

27  The Rada Defendants contend that these state-law claims are personal to the injured parties.

28  For example, the Rada Defendants argue that the alleged fiduciary duty, duty of due care, and

1   confidential relationship, were all owed by the Rada Defendants to the investors, not to the

2   Plaintiff.  The Rada Defendants argue that the Plaintiff lacks standing to bring claims or

3   collect and distribute a damage award among the victims.

4       The Plaintiff argues that he has standing to bring these claims because, in his capacity

5   as Receiver, he seeks redress "for injuries to the underlying receivership entities."  The

6   Plaintiff also argues that Mid-America *was* injured when Dillie transferred funds to the Rada

7   Defendants to further the Ponzi scheme, and that the Receiver is entitled to return of such

8   funds to redistribute to Mid-America's creditors (the victims).  *See, e.g., Scholes,* 56 F.3d at

9   753 (finding that a corporation in receivership was harmed by transfers used for an

10   unauthorized purpose and the receiver had standing to bring claims to seek return of such

11   funds to distribute them to the tort creditors of the receivership); *S.E.C. v. Cook*, 2001 WL

12   256172 (D.C. Tex. 2001) (a receiver represents not only the entity in receivership, but also

13   the interests of its creditors) (not reported).  The Plaintiff also argues that the Receiver has

14   standing to bring claims in the interest of creditors based on public-policy grounds.  *See, e.g.,*

15   *Craft v. Sunwest Bank of Albuquerque, N.A.,* 84 F.Supp.2d 1226, 1231 (D. N.M. 1999)

16   (causes of action such as breach of fiduciary duty by an officer of a company belong to the

17   company and a receiver has standing to bring such causes of action whether or not the action

18   could have been brought on behalf of policyholders or other creditors; a receiver has standing

19   to bring breach-of-trust and negligence claims because, if successful, they will benefit the

20   estate as a whole rather than any individual claimant); *Cordial v. Ernst & Young,* 483 S.E.2d

21   248, 257 (W. Va. 1996) (a receiver acts as the representative of interested parties, such as the

22   defunct corporation, its policyholders, creditors, shareholders, and other affected members

23   of the public and has standing, in its capacity as receiver, to bring an action to vindicate the

24   rights of such interested parties).

25       Although there is a split in authority regarding this issue, the Court finds the

26   Plaintiff's position more persuasive.  The allegedly fraudulent transfers in this case removed

27   assets from Mid-America for an unauthorized purpose and by doing so injured Mid-America.

28   *See Scholes v. Lehmann,* 56 F.3d at 754.  The defrauded investors in this case are tort-

1    creditors of the receivership. *See id.* at 755.  Mid-America is entitled to seek return of these

2    funds for the benefit of the receivership, so that it may reimburse its creditors and/or victims

3    of its tortious actions. *See id.* at 754.  Additionally, the alleged state-law causes of action,

4    if successful, will benefit the receivership estate as a whole rather than any individual

5    creditor. *See Craft,* 84 F.Supp.2d at 1231.  Accordingly, the Court finds that the Receiver

6    has standing to bring the alleged state-law claims.

7    `            B.    **Personal Jurisdiction over Non-resident Defendants**

8            The Plaintiff's Third-Amended Complaint alleges violations of the Federal Securities

9    and Exchange Acts as well as pendent state-law claims.  The Rada Defendants argue that

10   because CGAs are not "securities," the Plaintiff cannot prove a violation of federal securities

11   law and the "nationwide service of process" provision of the Federal Securities and

12   Exchange Act, 15 U.S.C.A. § 78aa (West 1997), does not apply to them.  They also argue

13   that Arizona's "Long Arm Statute" does not confer jurisdiction over the non-resident

14   Defendants.  Thus, the Rada Defendants argue, the Court must dismiss all claims against the

15   non-resident  Defendants for lack of personal jurisdiction.

16           In order to find that the United States District Court for the District of Arizona has

17   personal jurisdiction over the Rada Defendants, there must be an applicable rule or statute

18   which potentially confers jurisdiction over them. *Secs. Investor Prot. Corp. v. Vigman*, 764

19   F.2d 1309, 1313-14 (9th Cir. 1985).  Additionally, the assertion of such jurisdiction must

20   comport with constitutional principles of due process. *Id.*

21           15 U.S.C. § 78aa provides that any suit or action to enforce any liability or duty

22   created under the Securities Act may be brought in the district where any act or transaction

23   constituting the violation occurred, and process may be served in any district where the

24   defendant is an inhabitant or wherever the defendant may be found. *Secs. Investor Prot.*

25   *Corp.,* 764 F.2d at 1314.  Thus, if a lawsuit seeks to enforce a liability created by the

26   Securities Act, the court has jurisdiction of the defendant "wherever he may be found." *San*

27   *Mateo County Transit Dist. v. Dearman, Fitzgerald and Roberts, Inc.,* 979 F.2d 1356, 1358

28   (9th Cir. 1992).  Because 15 U.S.C. § 78aa provides for nationwide service of process, the

statute confers personal jurisdiction over defendants served within the United States. *Mariash v. Morrill,* 496 F.2d 1138, 1142-43 (2d Cir. 1974).

When a federal district court is sitting in diversity, due process requires that the defendant have some minimum "contacts, ties or relations" with the forum state in order to confer personal jurisdiction over the defendant. *Secs. Investor Prot. Corp,* 764 F.2d at 1315. However, "minimum contacts" with a particular district or state for purposes of personal jurisdiction is not a limitation imposed on the federal courts in a federal-question case by due process concerns. *Id.* Congress can provide for nationwide service of process in federal court for federal-question cases without falling short of the requirements of due process. *Id.* Thus, where a federal statute, such as 15 U.S.C. § 78aa, confers nationwide service of process, "the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Id.* (internal quotation and citation omitted); *accord Go-Video, Inc. v. Akai Elec. Co., Ltd.*, 885 F.2d 1406, 1414 (9th Cir. 1989) (as long as a party has minimum contacts with the United States, Section 27 of the Securities Exchange Act confers personal jurisdiction over the defendant in any federal district court).

Because this Court held that CGAs are securities and are not exempted, the Plaintiff's allegations of violations of federal securities laws permits application of 15 U.S.C. § 78aa. Although the Rada Defendants argue that the non-resident Defendants do not have minimum contacts with the State of Arizona, they do not contest that the Defendants were served within the United States. Likewise, they do not argue that any of the Defendants do not have minimum contacts with the United States. Accordingly, the Court finds that it has personal jurisdiction over the Rada Defendants in this case and that the requirements of due process have been met.

The Rada Defendants suggest that nationwide service of process pursuant to § 78aa extends only to the Plaintiff's securities claims and does not confer personal jurisdiction over the Rada Defendants with respect to the pendent state-law claims. The Court disagrees. As the Third-Circuit Court of Appeals aptly stated:

> [T]he Securities Act of 1933 and the Securities Exchange Act of

> 1934 Congress has bestowed upon the United States District Courts the power to extend their writ extraterritorily so as to compel a personal appearance before them. Once the defendant is before the court, it matters little, from the point of view of procedural due process, that he has become subject to the court's ultimate judgment as a result of territorial or extraterritorial process[.]

*Robinson v. Penn Central Co.,*  484 F.2d, 553, 555 (3d Cir. 1973).  Once the Court has personal jurisdiction over the Rada Defendants pursuant to a federal statute, the question of whether it can decide ancillary state-law claims is not one of personal jurisdiction but one of subject matter jurisdiction.  *Id.*  In other words, the question is one of basic pendent jurisdiction.  *Id.*

Because this Court has personal jurisdiction over the Rada Defendants pursuant to 15 U.S.C. § 78aa, principles of pendent jurisdiction give this Court the discretion to decide the state-law claims as well.  *See, e.g, DeJames v. Magnificence Carriers, Inc.,* 654 F.2d 280, 284 (3d Cir.), *cert. denied,* 454 U.S. 1085 (1981) (provision authorizing nationwide service of process in federal question case, obviates the need to rely on a long-arm statute for authorization of service of process); *Int'l Controls Corp. v. Vesco,* 593 F.2d 166, 175 n. 5 (2d Cir.), *cert. denied,* 442 U.S. 941, 99 S.Ct. 2884, 61 (1979) (finding that principles of pendent jurisdiction allow a district court to consider state-law claims where a "Section 27"[8] claim is alleged and service on the defendants has been made pursuant to that federal statute), *Robinson v. Penn Central Co.,* 484 F.2d 553, 555-56 (3d Cir. 1973) (a district court with personal jurisdiction obtained by "extraterritorial" service authorized by federal statute has discretion to consider pendent state-law claims); *Gill v. Three-Dimensions Systs. Inc.,* 87 F.Supp.2d 1278, 1283 (M.D. Fla. 2000) (the Securities Exchange Act's nationwide service of process provision applied to out-of-state defendants alleged to have committed securities fraud could also be used to obtain personal jurisdiction over defendants with respect to pendent state-law claims); *Piper Acceptance Corp. v. Slaughter,* 600 F.Supp. 169, 171-72

---

[8] Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa.

(D. Colo. 1985) (personal jurisdiction concerning federal claims is extended to related ancillary state-law claims); *accord Stewart v. Ragland,* 934 F.2d 1033, 1036 (9th Cir. 1990) (holding that the district court had personal and subject matter jurisdiction over federal securities act claims and pendent state-law claims); *Bulgo v. Munoz,* 853 F.2d 710, 713 (9th Cir. 1988) (holding that the district court had jurisdiction under section 27 of the Securities Exchange Act, 15 U.S.C. § 78aa, 28 U.S.C. § 1331, and the principles of pendent jurisdiction).

The Rada Defendants' request to dismiss the non-resident Defendants is denied.

C.     **Statute of Limitations, Statute of Repose, Doctrine of Laches**

1.     **Statute of Limitations/Statute of Repose**

Count Nine of the Plaintiff's Third-Amended Complaint alleges that the Defendants engaged in a series of fraudulent transfers that violate Ariz. Rev. Stat. Ann. ("A.R.S.") §§ 44-1004(A)(1) and (2) and 44-1005 (West 2003).[9]   The Rada Defendants argue that they are entitled to summary judgment on any fraudulent-transfer claims based on transfers made prior to December 3, 1999, because such claims are barred and/or extinguished by the applicable statute of limitations and/or statute of repose.

Arizona has adopted a limitation period that was expressly tailored for fraudulent transfers. *Moore v. Browning,* 203 Ariz. 102, 107, 50 P.3d 852, 857 (Ct. App. 2002) (citing A.R.S. §§ 44-1008 and 44-1009).  A.R.S. § 44-1009 (West 2003), provides, in relevant part:

> A claim for relief with respect to a fraudulent transfer or obligation under this article **is extinguished** unless an action is brought:
>
>> 1.  Under § 44-1004, subsection A, paragraph 1 within four years after the transfer was made or the obligation was incurred or, if later, within one year after the fraudulent nature of the transfer or obligation was or through the exercise of reasonable diligence could have been discovered by the claimant.

---

[9] These sections are provisions of the Arizona Uniform Fraudulent Transfer Act (UFTA)

> 2. Under § 44-1004, subsection A, paragraph 2 or
> § 44-1005, within four years after the transfer was
> made or the obligation was incurred.

(emphasis added).   Thus, a cause of action for fraudulent transfer under section § 44-1004(A)(2) or § 44-1005 is extinguished if it is filed more than four years after the transfer. *Id.*  A cause of action brought under § 44-1004(A)(1) is extinguished if it was filed: (1) more than four years after the transfer; and (2) more than one year after the allegedly fraudulent nature of the transfers had been discovered or should have been discovered.  *Id.*; *Moore,* 203 Ariz. at 108, 50 P.3d at 858.

The Rada Defendants point out that there is an absence of facts in the Complaint suggesting that the Plaintiff was unable to discover the fraudulent nature of the transfers within the applicable time frame.  The Rada Defendants also provide evidence that: (1) on October 21, 2001, Dillie and Mid-America sent a letter to the victims announcing Mid-America's insolvency; and (2) Mid-America was placed into receivership on December 20, 2001.  The Rada Defendants argue that as the Receiver, the Plaintiff had access to each and every payment and should have discovered the fraudulent nature of the transfers within the first year of his receivership, yet waited until December 3, 2003, to file a Complaint.  Thus, by the Rada Defendants calculations, the Plaintiff is not entitled to the one-year "safety window" for his claims based on actual or constructive notice, and all claims based on transfers occurring prior to December 3, 1999, have been extinguished.

The Plaintiff argues that he was unable to discover the fraudulent nature of the transfers alleged prior to the one-year period before he filed the Complaint.  The Plaintiff argues that his ability to discover the fraudulent nature of the earlier transactions was hindered by the fact that he had to sort through hundreds of thousands of business records that were not kept in order, and had to seek discovery from an individual attempting to avoid prosecution.  The Plaintiff argues that even if the limitations period does apply, it is a statute of limitations – rather than a statute of repose – and is subject to equitable tolling.  The Plaintiff urges the Court to find that the limitation period was tolled until the date that the

Receiver was appointed (December 20, 2003).  In other words, by the Plaintiff's calculations, the four-year time limit did not begin to run until December 20, 2003.

A statute of limitations is a procedural device that operates as a defense to limit the remedy available for an existing cause of action.  *Duran v. Henderson,* 71 S.W.3d 833, 837 (Tex. Ct. App. 2002).  A statute of repose, on the other hand, creates a substantive right to be free from liability after a legislatively-determined period.  *Id.*  While a statute of limitations merely bars the enforcement of a right, a statute of repose *extinguishes* the claim after the specified time period has expired.  *Id.*; *see also U.S. v. Bacon,* 82 F.3d 822, 823 (9th Cir. 1996).  Unlike a traditional statute of limitations, the statute of repose contained in the UFTA cannot be waived.  *Duran,* 71 S.W.3d at 837.

The Plaintiff cites no law in support of its argument that A.R.S. § 44-1009(A)(1) is a statute of limitation rather than a statute of repose.  The only Arizona case interpreting the statute has referred to it as a "statute of repose."  *Moore,* 203 Ariz. at 107, 50 P.3d at 857.  Additionally, the fact that the legislature chose language specifying that claims brought outside the statute's time limits are "extinguished," rather than merely "barred," supports the conclusion that this is a statute of repose rather than a statute of limitation.  A.R.S. § 44-1009; *Bacon,* 82 F.3d at 823.

Notably, after analyzing the statutory language and researching the legislative history, the Arizona Court of Appeals declined to apply principles of equitable tolling.  *Id.* at 110, 50 P.3d 860.  This Court does likewise.  A claim that has been extinguished cannot be tolled.  *See Amoco Prod. Co. v. Newton Sheep Co.,* 85 F.3d 1464, 1472 (10th Cir. 1996) (statute of repose sets "absolute time limit beyond which liability no longer exists and is not tolled").  Consistent with the statutory language, the time limits applicable to the Plaintiff's fraudulent-transfer claims began to run at the time that each allegedly fraudulent transfer took place, not on the date that the Receiver was appointed.

In sum, the Plaintiff filed his Complaint on December 3, 2003.  Therefore, pursuant to A.R.S. § 44-1009, the Plaintiff's § 44-1004(A)(2) and § 44-1005 claims have expired to the extent that they rely on fraudulent transfers occurring prior to December 3, 1999.

1    Likewise, any § 44-1004(A)(1) claims based on transfers occurring prior to December 3,

2    1999, have expired *unless* the Plaintiff can show that "through the exercise of reasonable

3    diligence," he did not discover and could not have discovered the fraudulent nature of the

4    transfers earlier than one year before he filed his Complaint. *Moore,* 203 Ariz. at 108, 50

5    P.3d at 858.

6         The Plaintiff, however, argues that he is not bound by the limitations set forth in

7    A.R.S. § 44-1009 because it is not binding on the government and this action was brought

8    by a court-appointed Receiver ancillary to an action initiated by the S.E.C.  The only cases

9    cited by the Plaintiff in support of this argument involve statutes of limitation, not statutes

10   of repose.  *In re Diamond Benefits Life Ins. Co.,* 184 Ariz. 94, 98, 907 P.2d 63, 67 (1995)

11   (answering a question certified by the district court and finding that the receiver in a

12   delinquency proceeding is acting on behalf of the citizens of the state and is exempt from the

13   two-year statute of limitations for conversion); *Warfield v. Gardner,* 346 F.Supp.2d 1033,

14   1047 (D. Ariz. 2004) (holding that the statute of limitations for state-law cause of action for

15   conversion does not apply to a claim brought by a court-appointed receiver); *accord* A.R.S.

16   § 12-510 ("Except as provided in § 12-529, the state shall not be barred by the limitations of

17   actions prescribed **in this chapter**") (emphasis added).

18        Substantive time limits, as opposed to procedural statutes of limitation, are binding

19   on the federal government. *Resolution Trust Corp. v. Olson,* 768 F.Supp. 283, 285 (D. Ariz.

20   1991).  Put another way, although statutes of limitations are not binding on the government,

21   statutes of repose are.  *U.S. v. Rezzonico,* 32 F.Supp.2d 1112, 1113 (D. Ariz. 1998); *Shasta

22   View Irrigation Dist. v. Amoco Chemicals Corp.,* 986 P.2d 536, 543 (Or. 1999) (the public

23   policy for exempting governments from statutes of limitations does not apply to statutes of

24   ultimate repose).

25        Notwithstanding the fact that the Plaintiff in this case is a court-appointed Receiver,

26   the Plaintiff is subject to the time limits set forth in A.R.S. § 44-1009(A)(1).  Thus, the

27   Plaintiff cannot base its section § 44-1004(A)(2) or 1005 claims on fraudulent transfers that

28   took place prior to December 3, 1999 (more than four years prior to the initiation of this

lawsuit), because those claims have been extinguished. *Id.* However, the Plaintiff can base its claims under § 44-1004(A)(1) on allegedly fraudulent transfers that took place prior to December 3, 1999, *unless* this action was filed more than one year after the allegedly fraudulent nature of the transfers should reasonably have been discovered. *Id.*; *Moore,* 203 Ariz. at 108, 50 P.3d at 858. Because the latter issue requires a factual determination,[10] it is not an issue this Court can resolve when deciding a motion for summary judgment. *Id.* at 111, 50 P.3d at 861.

### 2.   Doctrine of Laches

The Rada Defendants also argue that the doctrine of laches equitably bars recovery due to the Receiver's delay in bringing this action. The Rada Defendants acknowledge that it is their burden to show that the defense of laches applies in this case. *See, e.g., Lakin Cattle Co. v. Engelthaler,* 101 Ariz. 282, 284, 419 P.2d 66, 68 (1966) (an affirmative defense must be plead and proved by the defendant).

The Rada Defendants argue that the doctrine of laches applies in this case because it was unreasonable for the Receiver to wait more than two years after being appointed to file these claims against the Defendants. The Rada Defendants argue that they have "been injured due to the Receiver's carelessness, laxity and 'unreasonable delay' in filing."

The Plaintiff responds that the doctrine of laches is unavailable as a defense in this case because this action was brought by the court-appointed Receiver as part of its governmental function to protect the public from individuals attempting to defraud the public. The Court agrees.

The Rada Defendants do not dispute in their Reply that the Plaintiff filed this action pursuant to his duties as the court-appointed Receiver. Equitable defenses, such as estoppel and laches, "will not lie against the state, its agencies or subdivisions in matters affecting

---

[10] The parties have presented evidence creating a genuine issue of fact regarding whether the Plaintiff should have reasonably determined the fraudulent nature of these transactions within the first year of his receivership.

governmental or sovereign functions." *Mohave County v. Mohave-Kingman Estates, Inc.*, 120 Ariz. 417, 421, 586 P.2d 978, 982 (1978).  Such equitable defenses are only available when the state, agency, or municipality, is acting within its proprietary capacity in bringing the lawsuit.  *Id.; see also, Heckler v. Comty. Health Servs. of Crawford County, Inc.,* 467 U.S. 51, 67, 104 S.Ct. 2218, 2227 (1984) (Rehnquist, J., concurring) (as a general rule, laches is no defense to a suit brought by the government to enforce a public right or to protect a public interest); *Kerby v. State ex rel. Frohmiller,* 62 Ariz. 294, 308, 157 P.2d 698, 704 (1945) (doctrine of laches does not apply against the state absent a statute expressly allowing such a defense).

Federal courts have authority to issue a variety of "ancillary relief" measures in actions brought by the S.E.C. to enforce the federal securities laws.  *S.E.C. v. Wencke (Wencke II),* 622 F.2d 1363, 1369 (9th Cir. 1980).  One of those measures is to appoint a receiver and impose a receivership over the various entities affected by the alleged fraud. *Id.*  The purpose of the appointment of a receiver is to prevent further violations of federal securities laws and to protect the public.  *S.E.C. v. Wencke (Wencke I),* 577 F.2d 619, 623 (9th Cir. 1978).  The court-appointed receiver is "an officer of the court."  *S.E.C. v. Am. Principals Holding, Inc. (In re: San Vicente Medical Partners)*, 962 F.2d 1402, 1409 (9th Cir. 1991).  The filing of this ancillary lawsuit against the Defendants by the Receiver appointed in *S.E.C. v. Dillie et al.,* CIV-01-2493-PHX-JAT is an effort by the government to protect the public.  Thus, the Court finds that the doctrine of laches is not available to the Rada Defendants as a defense to the Plaintiff's claims.

### D.    **Availability of Constructive Trust as a Remedy (Count Three)**

The Plaintiff's Third-Amended Complaint alleges that the Defendants, as a result of the actions alleged, received an unknown amount of "facilitation fees" and that a constructive trust should be imposed on the facilitation fees and returned to the Receiver.  The Rada Defendants argue that a constructive trust is only a remedy and cannot be asserted as a separate cause of action.  The Plaintiff responds merely that the Court should construe the

reference to constructive trust in Count Three as a remedy requested for the underlying claim of "secret profits."  The Court construes the Plaintiff's reference to a constructive trust as a request for a particular remedy, not a separate cause of action.

Next, the Rada Defendants argue that commissions they earned by selling the CGAs are not receivership assets covered by the Court's Order in *S.E.C. v. Dillie,* 01-2493-PHX-JAT, and imposition of a constructive trust with respect to such monies would not only be improper, but would violate the Rada Defendants' due-process rights.  Specifically, the Rada Defendants argue that because they were not parties to the underlying S.E.C. action and did not have an opportunity to participate in the receivership proceedings, they did not have notice or an opportunity to participate in any of the hearings, or to object to the Court's final Order.  Thus, they argue, incorporating their assets into the receivership estate would violate their due-process rights.

The Rada Defendants cite *San Cincente Medical Partners Ltd. v. Am. Principals Holding, Inc.,* 962 F.2d 1402, 1406 (9th Cir. 1992), for the proposition that procedural due process requires that owners of property who were not named defendants in an S.E.C. action must be provided with notice, an opportunity to retain counsel, participate in the proceedings, and to voice objections and assert affirmative defenses.  The Court agrees that the Constitution requires that property owners receive procedural due process in the form of notice and opportunity for a hearing.  *Id.* at 1407.  Property cannot be subjected to a court's judgment unless reasonable and appropriate efforts have been made to give the property owners actual notice of the action.  *Id.*  For the reasons set forth below, the Court finds that the Rada Defendants were provided with notice and an opportunity to be heard in this case.

A receiver in a S.E.C. action may petition the court for an order to show cause against a possessor of money belonging to the receivership who is not a party to the original S.E.C. action.  *U.S. v. Ariz. Fuels Corp.,* 739 F.2d 455, 458 (9th Cir. 1984).  This sort of summary proceeding satisfies the requirements of procedural due process so long as the non-party is provided with adequate notice and opportunity to be heard.  *S.E.C. v. Wencke,* 783 F.2d 829,

838 (9th Cir. 1986), *cert. denied,* 479 U.S. 818, 107 S.Ct. 77 (1986).  Even in cases where plenary proceedings were required, there is no due process violation unless the third-party can show that he was prejudiced by the summary proceedings and would have been better able to defend his interests in a plenary proceeding.  *Id.* at 838.

Although it is true that the Rada Defendants were not parties to *S.E.C. v. Dillie,* 01-2493-PHX-JAT, the Rada Defendants are named parties to *this* action.  In other words, this is not a "summary" proceeding, it is a *plenary* action that is ancillary to the S.E.C. case.  The Rada Defendants have been provided all of the procedural protections that go along with a plenary action.  The Rada Defendants have been served with the Complaint.  The Rada Defendants have been permitted the opportunity to answer, take discovery, and file related briefs and exhibits.  The Rada Defendants have responded to the Receiver's Motion for Partial Summary Judgment.  The Rada Defendants filed a Motion for Summary Judgment asking for judgment on a number of the Plaintiff's claims, and addressing the availability of imposition of a constructive trust over the Defendants' assets.  This Court heard oral argument on the issues raised by the Rada Defendants at a hearing on July 17, 2006.

Clearly, the Rada Defendants had notice of the nature of these proceedings, as well as an opportunity to respond.  Accordingly, the Court concludes that the requirements of due process have been met.  *See, e.g., In re San Vicente Medical Partners Ltd.,* 962 F.2d at 1407 (holding that where a third-party was not named in an underlying S.E.C. action, due process requirements were met because opportunities for a hearing were available before any material deprivation of a property interest occurred).

The Rada Defendants also argue that the Plaintiff cannot prove all of the elements necessary to impose a constructive trust over the Rada Defendants' property.  Specifically, they cite *Linder v. Lewis, Roca, Scoville & Beauchamp,* 85 Ariz. 118, 123, 333 P.2d 286, 290 (1958), for the proposition that the Plaintiff must show that it is inequitable for Rada Defendants to retain title.

A constructive trust is an equitable remedial device generally used to prevent unjust

enrichment. *Burch & Cracchiolo, P.A. v. Pugliani,* 144 Ariz. 281, 285, 697 P.2d 674, 678 (1985).  A constructive trust arises by operation of law when the circumstances under which property was acquired make it inequitable for the one who holds legal title to the property to retain ownership.  *Bates v. Bates,* 1 Ariz.App. 165, 168, 400 P.2d 593, 596 (Ct. App. 1965).  Thus, through the constructive trust remedy, a court has jurisdiction to reach property in the hands of a "wrongdoer."  *Warren v. Whitehall Income Fund,* 170 Ariz. 241, 244, 823 P.2d 689, 692 (Ct. App. 1992).  Constructive trust must be proven by clear and convincing evidence.  *Stoltz v. Maloney,* 129 Ariz. 264, 267, 630 P.2d 560, 563 (Ct. App. 1981).  However, there is no set or unyielding formula in decreeing a constructive trust and courts will do so when a party is under an equitable duty to give another the benefit of property to which he has acquired legal title.  *Chirekos v. Chirekos,* 24 Ariz.App. 223, 224, 537 P.2d 608, 609 (Ct. App. 1975).  For the reasons set forth below, the Court concludes that there is a material question of fact as to whether such circumstances are present in this case.

The Rada Defendants agree that they were hired by Mid-America to sell CGAs and earned commission based on a percentage of the sales.  However, they allege that they had no actual or constructive knowledge of Dillie's actions or Mid-America's financial problems.  The Rada Defendants also argue that the Plaintiff has provided no evidence that Mid-America would have provided truthful financial information to the Rada Defendants had they inquired.

The Plaintiff, on the other hand, argues that industry standards required the Defendants to obtain and examine Mid-America's audited financial statements for the past three years before selling the annuities.  The Plaintiff's contention appears to be supported, at least in part, by the Defendants' own financial expert.  The Plaintiff has also provided evidence that suggests that at least one of the Rada Defendants did ask for the audited statements, but when Mid-America failed to provide them that Defendant proceeded to sell the annuities anyway.

Given the contradicting evidence presented by the parties, the Court finds that there

is a material question of fact as to whether the Rada Defendants' conduct in this case is sufficient to support the imposition of a constructive trust.

It is also important to note that the Plaintiff in this case has not filed for injunctive relief asking the Court to impose a constructive trust now, or at any time prior to the entry of final judgment. The Receiver's Response in Opposition to Rada Defendants' Motion for Summary Judgment makes it clear that the Plaintiff asserts the theory of constructive trust in his Third-Amended Complaint only as a potential remedy *in the event that the Plaintiff prevails on the merits of his secret profits claim.* Given the material questions of fact discussed above, and the equitable nature of a constructive trust, it would be premature for this Court to determine at this stage of the proceedings whether the remedy of constructive trust will be available or necessary at the time that the secret profits claim is decided. Accordingly, the Court declines to address the Rada Defendants' remaining arguments against the imposition of a constructive trust. The Rada Defendants can re-raise their objections if the Plaintiff prevails on the secret profits claim and seeks to impose a constructive trust in addition to a more traditional form of judgment.

E.    **State-law Fraud Claim (Count Six)**

The Rada Defendants argue that they are entitled to summary judgment on the claim of fraud alleged in Count Six because the Plaintiff failed to allege: (1) the exact misrepresentation stated by each Defendant; (2) the date, time, and place of each misrepresentations; (3) that each of the Rada Defendants knew of the falsity of the misrepresentation; (4) that the misrepresentations were unknown to the annuitants; and (5) that the annuitants justifiably relied on the misrepresentations. The Receiver completely failed to address this argument in his Response and Opposition to the Rada Defendants' Motion for Summary Judgment.

A state law claim for fraud must be plead with particularity. *Hall v. Romero,* 141 Ariz. 120, 124, 685 P.2d 757, 761 (Ct. App. 1984). Mere allegations that the defendants' actions were "fraudulent" are insufficient. *Id.* A complaint fails to state an actionable claim

unless *all* of the following elements have been alleged with particularity: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) his consequent and proximate injury.  *Nielson v. Flashberg,* 101 Ariz. 335, 338-39, 419 P.2d 514, 517-18 (1966).

If the Receiver intended to present a claim of common-law fraud, it was his duty to plead that claim in his Third-Amended Complaint, and to plead it with particularity.  *Rhoads v. Harvey Publications, Inc.,* 131 Ariz. 267, 268, 640 P.2d 198, 200 (Ct. App. 1982).  He failed to do so.

Where, as here, the party moving for summary judgment makes a prima facie showing that no genuine issue of material fact exists, the burden shifts to the party opposing summary judgment to produce sufficient competent evidence to show that a triable issue of fact does remain.  *Ancell v. United Station Assocs., Inc.,* 803 P.2d 450, 452 (9th Cir. 1990).  The non-moving party may not merely rest on its pleadings, it must produce some significant probative evidence tending to contradict the moving party's allegations and thereby creating a material question of fact. *Anderson,* 477 U.S. at 256-57, 106 S.Ct. at 2513-14 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968).

The Rada Defendants' Motion for Summary Judgment is granted with respect to the Plaintiff's common-law fraud claim alleged in Count Six.

### F.    **Fraudulent-transfer Claim Asserted in Count Nine**

The Plaintiff argues that he is entitled to summary judgment against the Rada

Defendants on the fraudulent-transfer claim brought pursuant to A.R.S. § 44-1004(A)(1).[11] The Court has already held that a material question of fact exists as to whether the Plaintiff's § 44-1004(A)(1) claims predating December 3, 1999, are extinguished by the applicable statute of repose – A.R.S. § 44-1009.   Therefore, the Receiver's motion is denied with respect to any fraudulent-transfer claims based on alleged transfers occurring on or before December 3, 1999.  The Court will now address the merits of the Plaintiff's section 44-1004(A)(1) fraudulent-transfer claim as it relates to transfers occurring after December 3, 1999.

A section 1004(A)(1) fraudulent conveyance is based on a showing of actual fraud. Thus, a fraudulent transfer under this statutory provision exists where there is "clear and satisfactory evidence of an 'actual intent to hinder, delay or defraud any creditor of the debtor' or of a debtor receiving no reasonable consideration for a transfer or obligation." *Gerow v. Covill,* 192 Ariz. 9, 17, 960 P.2d 55, 63 (Ct. App. 1998).  Actual intent may be shown by direct proof or by circumstantial evidence from which actual intent may be reasonably inferred. *Id.*

The statute itself provides a non-exclusive list of factors to consider when determining if actual intent to hinder, delay or defraud exists.  A.R.S. § 44-1004(B).  Those "badges of fraud" are as follows: (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was disclosed or concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all of the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the

---

[11] The Plaintiff does not move for summary judgment on the constructive fraud claims brought pursuant to A.R.S. §§ 44-1004 (A)(2) and 44-1005.

obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.  No further evidence of the common law elements of fraud are needed once actual intent is shown.  *Gerow,* 192 at 17, 960 P.2d at 63.

The Plaintiff does not rely on the traditional badges of fraud.  Instead, the Plaintiff argues that fraudulent intent is established as a matter of law when a defendant makes a transfer in furtherance of a Ponzi scheme.  Transfers made in furtherance of Ponzi[12] schemes have achieved a special status in fraudulent-transfer law.  *In re Grafton Partners,* 321 B.R. 527, 532 (9th Cir. BAP 2005) (proof that the transferor was running a Ponzi scheme can suffice to warrant a finding of actual fraud); *In re Cohen,* 199 B.R. 709, 717 (9th Cir. BAP 1996) (whether transfers were made with actual intent either to hinder or to delay or to defraud creditors is the same under the Bankruptcy Code and UFTA; proof of a Ponzi scheme is sufficient to establish the operator's actual intent to hinder, delay, or defraud creditors for purposes of actually fraudulent transfers); *accord In re Agricultural Research and Tech. Group, Inc. v. Palm Seedlings Partners-A,* 916 F.2d 528, 535 (9th Cir. 1990) (debtor's actual intent to hinder, delay or defraud its creditors may be inferred from the mere existence of a Ponzi scheme); *In re World Vision,* 275 B.R. 641, 656 (Bankr. M.D. Fla. 2002) (in cases involving a Ponzi scheme, the analysis is simplified because fraudulent intent is inferred).  One can infer an intent to defraud future undertakers from the mere fact that an individual was running a Ponzi scheme, because no other reasonable inference is possible.  *In re Slatkin,* 310 B.R. 740, 748 (C.D. Cal. 2004).  The orchestrator of the scheme must know all along, from the very nature of his activities, that investors at the end of the line will

---

[12] A "Ponzi scheme" is a fraudulent arrangement in which an entity makes payments to investors from monies obtained from later investors rather than from any "profits" of the underlying business venture.  *In re Cohen,* 199 B.R. 709, 717 (9th Cir. BAP 1996).  The fraud consists of funneling proceeds received from new investors to previous investors in the guise of profits from the alleged business venture, thereby cultivating an illusion that a legitimate profit-making business opportunity exists and inducing further investment.  *Id.*

1    lose their money. *Id.* Knowledge to a substantial certainty constitutes intent in the eyes of

2    the law, and this knowledge that future investors will not be paid is sufficient to establish his

3    actual intent to defraud them. *Id.*

4        The parties agree that Mid-America made commission payments to the Defendants.

5    Robert Dillie ("Dillie") entered into a guilty plea agreement whereby he pled guilty to three

6    counts of an indictment related to his operation of a Ponzi scheme.  Thus, the Plaintiff

7    contends that Dillie's guilty plea conclusively establishes the existence of a Ponzi scheme

8    involving the Defendants and, therefore, satisfies the "intent to defraud" element of his

9    fraudulent-transfer claim.

10        The Defendants argue that Dillie's guilty plea does not establish that the these

11    Defendants had any intent to defraud the creditors.  The Court agrees.  A plea agreement

12    admitting to the operation of a Ponzi scheme is direct evidence of that individual's intent to

13    defraud. *In re Slatkin,* 310 B.R. 740, 748 (C.D. Cal. 2004).  However, the Rada Defendants

14    have not admitted to operating a Ponzi scheme.  In fact, they contend that they were

15    completely unaware of Dillie's scheme.  And A.R.S. § 44-1008(A) provides an affirmative

16    defense where a defendant can prove, among other things, that he took "in good faith."

17        Dillie admitted that he was using Mid-America to sell CGAs which he knew would

18    not be paid because of insufficient assets and because the monies collected from the sales

19    were being used for his own personal purposes.  According to the indictment, Dillie used

20    Mid-America "to market[] [Charitable Gift Annuities] throughout the United States through

21    a network of commissioned sales brokers," and that the Ponzi scheme was promoted by

22    "making at least $3 million in commission payments to brokers employed to sell [Charitable

23    Gift Annuities] to investors."  (Pages 2 and 5 of the Indictment).  Although it is clear that

24    Dillie admitted to using Mid-America to solicit the Defendants to further his Ponzi scheme,

25    there is absolutely no indication by Dillie that the independent brokers, were "running,"

26    "operating," or had any knowledge of the Ponzi scheme or the fact that the investors would

27    not be paid.

28        The Court finds that the Receiver has shown the existence of a Ponzi scheme.  The

1  Court finds that there was actual intent by the transferor Dillie and MAF.  Thus, the Receiver

2  has, as a matter of law, shown the existence of a fraudulent transfer.  However, the Court

3  finds that the parties have presented conflicting evidence, creating a material question of fact,

4  as to whether the Defendants are entitled to the defenses provided by statute, including the

5  good faith defense under A.R.S. § 44-1008(A).  Accordingly, the Receiver's Motion for

6  Partial Summary Judgment is denied.  Because the Court has found a material question of

7  fact precluding the entry of summary judgment, it need not address the Defendants'

8  remaining arguments in opposition to summary judgment on the § 44-1004(A)(1) fraudulent-

9  transfer claim.

10  **III.    CONCLUSION**

11         The Receiver's Motion for Partial Summary Judgment is denied in its entirety.  The

12  Court has personal jurisdiction over the Defendants pursuant to 15 U.S.C. § 78aa.

13         The Rada Defendants' Motion for Summary Judgment is granted in part and denied

14  in part.  The motion is granted with respect to: (1) the common-law fraud claim alleged in

15  Count Six of the Plaintiff's Third-Amended Complaint; and (2) any A.R.S. §§ 44-1004(A)(2)

16  and 44-1005 fraudulent-transfer claims based on transactions occurring prior to December

17  3, 1999.  The motion is denied with respect to any remaining §§ 1004(A)(2) and 44-1005

18  fraudulent-transfer claims based on transactions that occurred subsequent to the

19  aforementioned date.  Given the existence of a material question of fact preluding summary

20  judgment, the Rada Defendants' motion is also denied with respect to the Plaintiff's A.R.S.

21  § 44-1004(A)(1) fraudulent-transfer claims.  The Rada Defendants' Motion for Summary

22  Judgment is denied with respect to all other claims and/or arguments.

23  / /

24

25

26

27

28

Accordingly,

IT IS ORDERED consistent with the above opinion, the Rada Defendants' Motion for Summary Judgment (doc. 476) is DENIED IN PART AND GRANTED IN PART.

IT IS FURTHER ORDERED the Receiver's Motion for Partial Summary Judgment (doc. 464) is DENIED.

DATED this 5th day of September, 2006.

_____
James A. Teilborg
United States District Judge