1   **WO**

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7                          DISTRICT OF ARIZONA

8

9   Lawrence J. Warfield, as Receiver,          No. CV-03-2390-PHX-JAT (LOA)

10              Judgment Creditor,              **REPORT AND RECOMMENDATION**

11          vs.

12
    Michael Alaniz; Robert Carroll; et al.,
13
                Judgment Debtors,
14

15

16  Penn Treaty Network America Insurance
    Co.,
17
                Garnishee.
18

19

20          This matter arises on Judgment-Creditor Lawrence J. Warfield's

21  Application for Judgment on Garnishment and Notice of Lodging Proposed Judgment on

22  Garnishment, filed on December 26, 2007.  (docket # 827)  On February 4, 2008, the

23

24  undersigned Magistrate Judge[1] issued its Order To Show Cause why this Court should not

25  ─────────────────

26       [1] Judgment-creditor's counsel is informed that Congress changed the formal title of United
    States Magistrate to United States Magistrate Judge in the Judicial Improvement Act of 1990,
27  effective December 1, 1990. Section 321 of Pub. L. No. 101-650; §102, as set out as a note under
    28 U.S.C. § 631; *Dixon v. Ylst*, 990 F.2d 478, 480 n. 1 (9th Cir. 1993) ("The title was changed from
28  'magistrate' to 'magistrate judge.'"); *United States v. Steelwright*, 179 F.Supp. 2d 567, 569 n.3 (D.
    Md. 2002). Thus, a magistrate judge may be appropriately called judge or magistrate judge, but not
    magistrate.

recommend to the assigned District Judge that Judgment-Creditor Lawrence J. Warfield's Application for Judgment on Garnishment be denied. (docket # 829) Judgment-Creditor timely filed his written Response. For the reasons set forth below, the undersigned recommends that the subject Application for Judgment on Garnishment be **DENIED**.

Pursuant to a writ of garnishment for non-earnings, Judgment-Creditor Warfield seeks entry of judgment against Garnishee Penn Treaty Network America Insurance Co. ("Penn Insurance") in the sum of $350.25 which purportedly represents "non-earnings" belonging to Judgment-Debtor Robert Carroll held by Garnishee Penn Insurance.  Subsequent to service of the subject writ, counsel for both Plaintiff Warfield and Garnishee Penn Insurance stipulated and agreed that because "Garnishee anticipates additional monies may be paid to Judgment Debtor [Robert Carroll]," that a form of Garnishment Judgment be entered that provides that Garnishee Penn Insurance shall pay to Plaintiff Warfield "any money due Robert Carroll payable by the Garnishee."  (docket # 827 at 2-3)  Judgment-Debtor Robert Carroll has neither filed an objection to the Application or proposed order nor stipulated in writing to the subject garnishment and request for a continuing lien.

Not knowing their exact relationship, Plaintiff Warfield justifiably served Garnishee Penn Insurance with writs of garnishment for both earnings and non-earnings of Judgment-Debtor Robert Carroll. (docket #  774; Exhibit 4)  Answering only the Writ of Garnishment for Non-Earnings, however, Garnishee Penn Insurance characterizes that the money it currently owes Judgment-Debtor Robert Carroll as "Non-Earnings" as it represents "two commission checks (totaling $341.28)," earned by Judgment-Debtor

Robert Carroll selling Garnishee's insurance products. (docket # 798 at 1, 3)  Plaintiff

Warfield's Response to OSC provides proof that Judgment-Debtor Robert Carroll is not

an employee of Garnishee Penn Insurance, but rather an "independent insurance agent"

and, therefore, an  "independent contractor." (docket # 831 at 2)  Judgment-Debtor Robert

Carroll and Garnishee Penn Insurance's relationship is governed by a General Agent's

Contract. (*Id.*; Exhibit "Exh" 5)  Plaintiff Warfield's Response to OSC concedes that the

monies held by Garnishee Penn Insurance is "Judgment Debtor's compensation . . .

dependent upon an insured under the General Agent's Contract, paying premiums to the

Garnishee." (*Id.*)  The significant issue, therefore, is whether Garnishee Penn Insurance is

holding "earnings" or "non-earnings" owed to and belonging to Judgment-Debtor Robert

Carroll under Arizona law.

Generally, a federal writ of garnishment is governed by the law of the state

in which the district court sits. Fed.Rule Civ.P. 69(a)[2]; *Hilao v. Estate of Marcos*, 95 F.3d

848 (9th Cir. 1996). Thus, Arizona's garnishment laws control and determine the validity

of Judgment-Creditor's Application for Judgment on Garnishment on non-earnings.

"Garnishment is a creature of statute and is strictly governed by the terms of

the statute creating the remedy." *Jackson v. Phoenixflight Productions, Inc*., 145 Ariz.

---

[2] Rule 69(a), FED.R.CIV.P., provides in relevant part:

In General. Process to enforce a judgment for the payment of money shall
be a writ of execution, unless the court directs otherwise. The procedure on
execution, in proceedings supplementary to and in aid of a judgment, and in
proceedings on and in aid of execution **shall be in accordance with the
practice and procedure of the state in which the district court is held**,
existing at the time the remedy is sought,. . . .  (emphasis added).

242, 244, 700 P.2d 1342, 1344 (Ariz. 1985) (citations omitted). Arizona's garnishment statutes distinguish "earnings" from "monies which are not earnings." *Frazer, Ryan, Goldberg, Keyt & Lawless v. Smith*, 184 Ariz. 181, 183, 907 P.2d 1384, 1386 (Ariz. Ct. App.1995).  A.R.S. § 12-1598.01 provides that its provisions apply "to indebtedness owed to a judgment debtor by a garnishee for monies which are earnings as defined in § 12-1598, paragraph 4."  A.R.S. § 12-1598.01.  A.R.S. § 12-1598 (4) defines "earnings" as:

> **compensation paid or payable for personal services**, whether these payments are called wages, salary, **commission**, bonus or otherwise. Earnings include periodic payments pursuant to a pension or retirement program.

A.R.S. § 12-1598(4) (emphasis added).

Whether the commissions of a independent contractor are "earnings" exempt from garnishment is an unsettled issue in Arizona. A.R.S. § 12-1598.01(B)'s language does not expressly exclude or include the garnishment of an independent contractor's earnings (commissions) from Arizona's statutory scheme which obviously seeks to protect a portion of a worker's compensation for personal services. Arizona's statutory language expressly directs that if it is "compensation paid or payable for personal services," without limitations of its applicability to only employer-employee relationships, garnishment of commissions must comply Arizona's statutory provisions and limitations on garnishment of earnings. A.R.S. § 33-1131(B)[3] exempts 75% of a

---

[3] A.R.S. § 33-1131(B) provides:

B. Except as provided in subsection C, the maximum part of the disposable earnings of a

worker's "disposable earnings" from a judgment-creditor's garnishment. In Arizona, "disposable earnings" include  "a debtor's wages, salary or compensation for his personal services, including bonuses and **commissions** . . . ." A.R.S. § 33-1131(A) (emphasis added).  Judgment-Creditor Warfield's arguments that commissions owed to Judgment-Debtor Robert Carroll, an independent insurance agent, are not earnings under Arizona law are unavailing and unpersuasive. The Court concludes that Judgment-Creditor Warfield's Application for Judgment on Garnishment of earnings via the non-earning's statutory scheme should be denied.

The Arizona Supreme Court instructs that Arizona's statutory garnishment scheme was primarily adopted from Texas. *Jackson,* 700 P.2d at 1345. "A statute which is adopted from another state will be presumed to have been adopted with a construction previously placed upon it by the courts of that state." *Id.* Where a statute is adopted from another state, cases construing that statute are persuasive. *Id.* at 1347 (citing *Cottonwood Development v. Foothills Area Coalition of Tucson, Inc*., 134 Ariz. 46, 653 P.2d 694 (1982). Texas courts liberally construe its garnishment statutes in favor of the wage earner. *Jackson,* 700 P.2d at 1345. Moreover, it is likely that the Arizona legislature, like Nevada's and others, intended its garnishment statutes to preserve part of the debtor's earnings for the benefit of himself and his family.  *In re Norris*, 203 B.R. 461, 466 (D. Nev. 1996)(citing *Miller v. Monrean*, 507 P.2d 771 (Alaska 1973) (purpose of income

debtor for any workweek which is subject to process may not exceed twenty-five per cent of disposable earnings for that week or the amount by which disposable earnings for that week exceed thirty times the minimum hourly wage prescribed by federal law in effect at the time the earnings are payable, whichever is less.

exemption statutes are to encourage debtor rehabilitation, preserve part of the debtor's earnings for benefit of his family, and to prevent debtor's family from being destitute)).

Unlike Texas which does not define "earnings" in its garnishment statutes or constitution, a Texas court has held that "[t]he term 'wages for personal service' necessarily implies a relationship of master and servant, or employer and employee, and excludes compensation due to an independent contractor as such." *Campbell v. Stucki*, 220 S.W.3d 562, 566-67 (Tex. Ct. App. 2007) (citing *Brasher v. Carnation Co*., 92 S.W.2d 573, 575 (Tex.Civ.App.-Austin 1936, writ dism'd).  Arizona, however, revised its statutory garnishment scheme, including A.R.S. § 12-1598 (4) and its definition of "earnings," in response to a federal judge's decision that Arizona's post-judgment garnishment procedures were unconstitutional. *Neeley v. Century Fin. Co*., 606 F.Supp. 1453, 1469-70 (D. Ariz. 1985); *In re Padilla*, 315 B.R. 164, 167 n.6 (D. Ariz. 2004). Judgment-Creditor Warfield has provided no legislative history to indicate whether Arizona's statutory definition of  "earnings" was adopted from Texas, any other state[4] or

_____

[4] Some courts conclude that commissions are earnings exempt from garnishment. *Harrington v. Dyer*, 50 Conn. Supp. 460, 466, 937 A.2d 77, 83 (Conn. 2007); *In re Duncan*, 140 B.R. 210 (Bankr. E.D. Tenn. 1992) (following Tennessee law);  *Marian Health Ctr. v. Cooks*, 451 N.W.2d 846, 848 (Iowa Ct. App.1989) (exemption for wages for personal services was not dependent upon wage earner's status as employee as opposed to independent contractor); *First Nat'l Bank of Guthrie v. Brown*, 579 P.2d 825 (Okla. 1978) ("[C]ommissions constitute compensation for personal services, and accordingly come within the definition of 'earnings' ".) Other courts, like Florida and Vermont,  have a similar statutory definition of earnings to Arizona's but their courts do not exempt commissions from garnishment. *Matter of Moriarty*, 27 B.R. 73 (Bankr. M.D. Fla.1983) (Where compensation of debtor, a licensed real estate agent, was based solely on commissions and was not dependent on hours worked, realty company exercised no control over progress of debtor's work except as to final results, and no withholding of social security tax was deducted from debtor's commission checks, nor were unemployment taxes paid by realty company on his earnings, debtor was an independent contractor and his compensation constituted pure real estate commissions, not subject to exemption.); *Olson v. Townsend*, 148 Vt. 135, 530 A.2d 566, 567-69 (1987) (determining that the Vermont garnishment protection provisions did not apply to a self-employed surveyor even

the federal Consumer Credit Protection Act. Title 15 U.S.C. §§ 1671-1677.[5]

In light of Arizona's definition of "earnings" that expressly provide some protection from garnishment for commissions, that Arizona courts are required to construe its remedial garnishment statutes in favor of the worker, and the fact that it matters little to the needs of an independent agent's family whether he is an employee or not,

**IT IS RECOMMENDED** that Judgment-Creditor Lawrence J. Warfield's Application for Judgment on Garnishment, docket # 827, be **DENIED.**

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment. The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See,* 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(e), Federal Rules of Civil Procedure. Thereafter, the parties have ten days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further

_____

to the extent that his "receivables" were for personal services).

[5] Title 15 U.S.C. § 1672(a) provides that "[t]he term 'earnings' means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program.

review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).  Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See*, Rule 72, Federal Rules of Civil Procedure.

Dated this 28th day of February, 2008.

Lawrence O. Anderson
United States Magistrate Judge